IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00464-WDM-KLM

MELISSA KING and
THE CHILDREN'S HOSPITAL,

    Plaintiffs,

v.

THE BOARD OF TRUSTEES FOR THE ROCKY MOUNTAIN UNITED FOOD AND
COMMERCIAL WORKERS UNION & EMPLOYERS HEALTH BENEFIT PLAN and THE
ROCKY MOUNTAIN UNITED FOOD AND COMMERCIAL WORKERS UNION &
EMPLOYERS HEALTH BENEFIT PLAN,

    Defendants.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Miller, J.

    This matter is before me on the Motion for Summary Judgment (doc no 39) filed by Defendants The Board of Trustees for the Rocky Mountain United Food and Commercial Workers Union & Employers Health Benefit Plan ("Board") and The Rocky Mountain United Food and Commercial Workers Union & Employers Health Benefit Plan (the "Plan"). Plaintiffs Melissa King and The Children's Hospital oppose the motion. Plaintiffs also filed a Motion to Supplement Administrative Record (doc no 50), which Defendants oppose. After a review of the briefs and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, Defendants' motion will be denied and this matter will be remanded to the Board for further proceedings consistent with this order. Because this decision is based on the existing administrative record, Plaintiffs'

motion to supplement will be denied without prejudice.

Background[1]

This is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff Melissa King ("King") is a participant in the Plan, which also covers King's son, Master Austin King ("Austin"). Austin has a number of disabilities and medical conditions, discussed further below. At issue are claims for services for Austin provided at the Children's Hospital Medical Day Treatment Program (the "Treatment Program") from June 1, 2004 to June 30, 2005.

The Plan is an employee benefit welfare plan subject to ERISA. Zenith Administrators ("Zenith") is a third party claims administrator for the Plan. The Board provides administrative review of initial denials of claims for benefits.

According to the First Amended Complaint, the Treatment Program is a "collaborative venture between The Children's Hospital and Denver Public Schools, designed to meet the medical, psychological and educational needs of severely ill and/or disabled children." The Plan agreed to reimburse the Children's Hospital ninety percent of billed charges for covered services provided to Austin. Indeed, the Plan paid such claims from September 28, 2004 until February 22, 2005. However, on June 6, 2005, based on recommendations from Zenith, the Plan requested that the Children's Hospital refund the amount of $58,071.87 on claims paid. The Children's Hospital has refunded all amounts previously paid to it by the Plan. The total amount billed from June 1, 2004

---

[1]The facts set forth herein are drawn from the document entitled "Stipulated Facts" (doc no 22) and the parties' briefs and are undisputed, unless otherwise noted.

2

through June 30, 2005 by the Children's Hospital is $163,339.09.

Benefits determinations are to be made in accordance with the Plan's rules and regulations (the "Rules"). Section 8.9(a)(xiv) of the applicable Rules provides that the Plan "shall not provide benefits for . . . . expense for learning deficiencies, behavioral problems and special education." Record at King/UFCW 0146. Zenith's recommendation was based on this exclusion. At the time it made this recommendation, the only information it had concerning the services provided at the Treatment Program were billing codes on the invoices. The majority of the invoices were for services coded "H0037," which stands for "community psychiatric supportive treatment program, per diem," according to industry standard billing procedures.

Article VII, Section 7.1(c) of the Plan's Rules provide that "If a claimant's claim is partially or wholly denied, he will receive notice from the Plan office stating the specific reason(s) for the denial and specific reference to the pertinent provision of the Plan documents on which the denial is based, describing and explaining any additional material or information required of the claimant in order to make the claimant's claim valid, explaining what steps must be taken to have the claim denial reviewed, and explaining that the initial decisions shall be a final decision unless the decision is appealed as hereinafter set forth." Record at King/UFCW 0079.

The notice to King regarding the denial of benefits contained the following information:

> NOTICE OF BENEFIT DETERMINATION
>
> The following statement explains any denial or reduction of

> services contained in this Explanation of Benefits. Please refer to your plan booklet for additional details.
>
> Remark Code 611 - EDUCATIONAL OR VOCATIONAL TESTING/TRAINING IS NOT COVERED
>
> Plan Provision: The Plan shall not provided [sic] benefits for treatment of learning deficiencies, behavioral problems and special education.
>
> Information That May Alter the Adverse Benefit Determination: If you believe this benefit was denied or reduced in error, you must provide information showing either that the services are different than those originally billed by the provider of service or that the plan provision was otherwise applied incorrectly. This information is necessary to determine if the original billing information was correct and Plan provisions applied appropriately.

*See, e.g.*, Record at King/UFCW 0359.

The notice then provided information on how to appeal the adverse determination.

> King appealed the denial of benefits to the Board. Her letter stated, *inter alia*:
>
>> This program provides the medical necessity that my child needs. It is not just a school environment. They provide him with a program that monitors his diabetes, gives him occupational therapy for his Lupus Disease, dietician closely monitors his diet (for the obesity, lupus, diabetes, and liver disease (auto-immune), orthochondridis), monitors his hormone growth deficiency, provides adequate bathroom breaks to help his inadequacy/urology issues, they also monitor his asthma and bronchial-trachealmalasia. This program is set up to help children who have medical illnesses that need year round care. The children that attend are chronically ill. The Medical Day Treatment provides their medical needs, direct contact with doctors, clinics are right on site so any needs are readily met. It is a medical necessity for my son to attend this program otherwise, he will never be able to attend any school environment with his special needs. . . . My child is on fourteen plus medications daily, no regular program can dispense all of these medications daily. I believe

4

> it would be in the best interest of the health plan and the insurer of the health plan to make an exception to the policy and fund this treatment because it would reduce the costly intervention later . . . .

Record at King/UFCW 0291-92. In addition, she provided to the Board letters from the medical personnel at the Treatment Program, as well as a brochure describing services provided at the Treatment Program. A letter dated August 16, 2005 describes Austin's medical conditions and explains that he received the following medical care at the program: glucose monitoring, administration of oral medication, daily peak flow to assess pulmonary function, treatment with albuterol inhaler, injections of growth hormone, lab draws, daily assessment of acute illnesses and orthopedic problems, dietary management, and individual, family, and group therapy. Record at King/UFCW 393. A July 1, 2005 letter sets forth Austin's medical conditions and lists the numerous medications he takes on a daily basis. Record at King/UFCW 394. The brochure provides few details of the Treatment Program, but explains that it is designed to address the "medical, academic and psychological needs" of children with chronic or debilitating disease. Record at King/UFCW 396. The brochure also explains that the Treatment Program is a joint project of the Children's Hospital and the Denver Public Schools. *Id.*

At Defendants' request, Zenith sent Plaintiffs' appeal records to a consulting physician for an opinion concerning the "nature, setting, duration and/or appropriateness of the health care services requested or provided." Record at King/UFCW 399. Dr. James S. Finke opined that medications could be given at home, injections and other treatments could be given at school, and other services could be given on an outpatient basis. *Id.*

5

He therefore opined that the services provided by the Treatment Program were not medically necessary. Record at King/UFCW 400. He did not address and offered no opinion about whether the Treatment Program amounted to services for "learning deficiencies, behavioral problems and special education." In a letter dated September 16, 2005, Defendants affirmed the decision to deny benefits based on the exclusion for expenses for learning deficiencies, behavioral problems and special education. Record at King/UFCW 404. Defendants gave as a secondary justification for the denial Dr. Finke's opinion that the Treatment Program was not medically necessary, despite the fact that Plaintiffs had never been alerted that this was an issue. *Id.*

The First Amended Complaint, which now governs this action, contains a single claim for benefits pursuant to 29 U.S.C. § 1132.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element

6

essential to the case." *Id.*

## Discussion

1.  Review of denial of benefits

The first issue is determining the applicable standard of review of a denial of benefits by an administrator of an ERISA plan. Regardless of the standard applied, in reviewing a plan administrator's decision, I generally may only consider the evidence and arguments that appear in the administrative record. *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992); *see also Hall v. UNUM Life Ins. Co. Of Am.*, 300 F.3d 1197, 1202-3 (10th Cir. 2002) (describing limited exceptions to this principle).

It is well established that, in general, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties do not dispute that the Plan gives the administrator this discretion and so the administrator's decision ordinarily would be reviewed under an arbitrary and capricious standard. *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1991).

However, it is undisputed that there exists here an inherent conflict of interest, as the Board of Trustees acts as both insurer and administrator of the Plan. In these circumstances, the Tenth Circuit has established that a "sliding scale" of heightened review applies. *Fought v. UNUM Life Ins. Co. Of America*, 379 F.3d 997, 1006 (10th Cir. 2004). "Under this less deferential standard, the plan administrator bears the burden of

7

proving the reasonableness of its decision pursuant to this court's traditional arbitrary and capricious standard." *Id.* Specifically, the plan administrator must demonstrate that its interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence. *Id.* The court decreases the level of deference in proportion to the seriousness of the conflict. *Id.* at 1004. Indicia of an arbitrary and capricious decision include a lack of substantial evidence – i.e., evidence "that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker," as well as mistake of law, bad faith, and conflict of interest. *Caldwell v. Life Ins. Co. Of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002). "Substantial evidence requires more than a scintilla but less than a preponderance." *Sandoval,* 967 F.2d at 382.

Defendants argue that their employment of a third party claims administrator eliminates or reduces the conflict of interest, such that the traditional arbitrary and capricious standard of review should apply. I disagree. Defendants have cited no case law or other authority to support this proposition[2] and it is undisputed that the Board, not Zenith, is the final decision maker. Therefore, I will apply the "less deferential" standard of review established by *Fought*.

2. <u>Application</u>

Applying this heightened standard of review, I conclude that the Board has failed to carry its burden to show that the decision was supported by substantial evidence.

---

[2]Defendants cite *Geddes v. United Staffing Alliance Employee Medical Plan, U.S.A.,* 469 F.3d 919 (10th Cir. 2006). However, *Geddes* does not concern conflicts of interest but rather only holds that delegation to a third party claims manager does not by itself trigger *de novo* review.

Accordingly, the denial of benefits was arbitrary and capricious and should be reversed.

First, the initial decision to deny benefits appears to have been based on nothing more than a billing code, which identified services provided as "community psychiatric supportive treatment program, per diem." However, "psychiatric supportive treatment" appears to be a covered expense and does not suggest that the services are educational in nature. The billing code alone does not provide "substantial evidence" to support the denial.

In addition, I conclude that the decision on appeal also was not supported by substantial evidence. Plaintiff's appeal letters and the information from Austin's medical providers demonstrated that he receives numerous medical and therapeutic services at the Treatment Program. The evidence, viewed as a whole, shows that the Treatment Program provides Austin with medical care, educational services, and psychiatric treatment. Thus, it appears that at least some portion, if not all, of the claim for benefits involves covered expenses. The record, however, lacks definitive information on whether and how the billing for the Treatment Program is allocated among the various services or if all costs are simply lumped together and billed to a health insurance provider. What little evidence there is seems to indicate that the amounts billed were for therapeutic and medical services, not educational costs, since the Treatment Program is also supported by the school district, which is required by law to provide special educational to children in need of it.[3]

---

[3]Under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1401-1485, school districts are required to provide children with disabilities access to a free appropriate public education designed to meet their particular needs. A "free

Dr. Finke's letter does not provide substantial evidence to support the decision. Dr. Finke does not opine as to whether the services provided by the Treatment Program are primarily educational rather than medical. Rather, Dr. Finke provides further evidence that the educational costs of the Treatment Program are most likely covered by the school district. *See* Record at King/UFCW 399 ("by law, school districts are required to provide all necessary educational services in the least restrictive environment, including occupational therapy.") In light of this information and the significant evidence showing that Austin receives medical and psychiatric services at the Treatment Program, and in the absence of any evidence indicating that the claimed expenses were for educational needs, the denial based on the exclusion for "special education" is not supported by substantial evidence.

Moreover, I conclude that the Board acted arbitrarily and capriciously by failing to describe and explain to King "any additional material or information required of the claimant in order to make the claimant's claim valid," as required by the Plan and by ERISA regulations. Defendants gave King little or no guidance about how she could show that the Treatment Program bills covered medical services, or, if educational costs were included, how to show the allocation of expenses (if possible). Although "nothing in ERISA requires plan administrators to go fishing for evidence favorable to a claim when it has not been brought to their attention that such evidence exists," Plaintiff's information on appeal clearly put Defendants on notice that at least a portion of the claims were not wholly

---

appropriate public education" includes, *inter alia,* "special education and related services" provided at public expense. 20 U.S.C. § 1401(9).

excluded by the "special education" exclusion. *See Gaither v. Aetna Life Ins. Co.,* 394 F.3d 792, 803 (10th Cir. 2004). The purpose of ERISA's regulations is to promote a "meaningful dialogue" between plan administrators and beneficiaries. *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625, 635 (10th Cir. 2003) (citations omitted). I conclude that the administrator did not engage in this dialogue but rather made a decision based on incomplete billing information and evidence strongly suggesting that the exclusion relied upon was not applicable.[4]

The administrator's decision cannot be upheld on the grounds that the medical services provided were not "medically necessary." This was not the reason for the initial denial and Plaintiffs were never given the opportunity to provide evidence to show the medical necessity of the services, indicating bad faith. There clearly has been no "meaningful dialogue" about the medical necessity of the services provided to Austin in the Treatment Program and this after-the-fact justification does not provide King with a full and fair review of the denial decision.[5] Moreover, since Dr. Finke's review was based on an

---

[4]In addition, to the extent that Defendants contend that some of these expenses are excluded because they are services for "behavioral problems," I conclude that there is an ambiguity in the exclusion at issue. The Plan excludes expenses for "behavioral problems" but appears to provide coverage for "treatment of a mental or nervous disorder," which could conceivably include some expenses related to behavioral problems. Record at King/UFCW 0091. There is no evidence before me as to how the administrator construes this part of the exclusion or whether it was applied here. If, on remand, Defendants assert this as an alternative basis for the denial, an explanation resolving this ambiguity will be needed.

[5]Defendants' contention that King put medical necessity at issue in her appeal letter by describing Austin's medical conditions and his needed treatment is unavailing. It is difficult to comprehend how the goals and purposes of ERISA are served by construing a mother's plea for coverage of medical care as a waiver of all procedural protections and justification for *post hoc* grounds for coverage denials. Not

11

incomplete record, or more accurately a record created to rebut the contention that the expenses were incurred for special education, it is inadequate to support the decision in this regard. Finally, the denial letter does not comply with 29 C.F.R. § 2560.503(g)(v)(B) ("If the adverse benefit determination is based on a medical necessity . . . exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request" must be included in the notification). No explanation is provided regarding the judgment that the treatment is not medically necessary, nor is King informed that she may receive such an explanation.

Because the denial of benefits was a reversal of previously-approved claims, occurred without any effort to clarify what was included in the billing, was not supported by substantial evidence, was issued without giving King adequate guidance on how to make the claim valid, and because the administrator provided an alternative *post-hoc* justification on appeal regarding which King had no opportunity to submit evidence, I conclude that the administrator's decision was arbitrary and capricious and is not entitled to deference.

When a plan administrator's decision is overturned as arbitrary and capricious, I may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or, alternatively, I may order an award of benefits. *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006). "Which of these two remedies is proper in a given case, however, depends upon the specific flaws in the plan

---

surprisingly, Defendants have not provided any legal authority supporting this position.

administrator's decision." *Id*. If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation. *Caldwell*, 287 F.3d at 1288. In contrast, if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate. *Id*. at 1289. In other words, a retroactive reinstatement of benefits is proper where, but for the plan administrator's arbitrary and capricious conduct, the claimant "would have continued to receive the benefits or where there [was] no evidence in the record to support a termination or denial of benefits." *DeGrado*, 451 F.3d at 1175 (citation omitted).

Plaintiffs request that I order an award of benefits, arguing that no further factual development is needed and that the Board is not entitled to exercise its discretion and get a second "bite at the apple." I disagree. It appears that further factual development is needed to determine whether any portion of the claimed expenses for the Treatment Program are attributable to educational costs.

3. <u>Motion to Supplement</u>

Plaintiffs seek to supplement the administrative record with materials relevant to the opinion letter of Dr. Finke. In his letter, Dr. Finke stated that he reached his opinion on medical necessity by using certain published guidelines, which apparently govern inpatient care. Plaintiffs seek to supplement the record with these guidelines because they were never provided to Plaintiffs and because the guidelines are inapplicable to Plaintiffs' claim. Because the existing record supports my determination that the administrator's decision was arbitrary and capricious, consideration of these supplemental materials is

13

unnecessary.

4.  Attorneys' Fees

Both parties have requested attorneys' fees, which is authorized under ERISA. 29 U.S.C. § 1132(g)(1) ("In any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). In determining whether to award attorneys' fees, I consider five factors: a party's culpability or bad faith; its ability to satisfy an award of fees; the deterrence value of an award; the number of plan participants affected by the case or the significance of the impact of the legal question involved; and "the relative merits of the parties' positions." *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1162 (10th Cir. 2007) (citation omitted). The parties did not address these factors in their requests and, therefore, I have an insufficient record and inadequate input to make a determination. Accordingly, the parties are directed to file supplemental briefing, not to exceed five pages each, regarding the attorneys' fee issue.

Accordingly, it is ordered:

1.  The Motion for Summary Judgment filed by Defendants (doc no 39) is denied. The decision by the Board to deny Plaintiff's claims is reversed.

2.  This matter is remanded to Defendants for further proceedings consistent with this order.

3.  The Motion to Supplement Administrative Record (doc no 50) is denied without prejudice.

4.  Plaintiff's request for attorneys' fees is reserved. The parties shall file five

page supplemental briefs addressing the factors to be considered for an award of attorney's fees.

DATED at Denver, Colorado, on January 29, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge